by the views we have expressed in this opinion, and need not now be further considered.

We conclude that the exceptions should be sustained and the motion for a new trial be granted, with costs to the plaintiff to abide the event. All concur.

---

(77 App. Div. 301.)

### FERRI v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, First Department. December 12, 1902.)

1. STREET RAILROD—INJURY TO BOY ON TRACK—INSTRUCTIONS.

In an action for the death of a boy run over by a street car, the witnesses of the accident, with one exception, testified that he ran on the track when the car was too near to avoid a collision, and did not remain standing for a moment before he was struck. Another witness, who had made contradictory statements, stated that he stopped on the track and started to get off when the car was about 10 feet from him. The court instructed that deceased was guilty of negligence in going on the track, but left it to the jury to say whether such negligence contributed to the accident. *Held* error, in that, if he was negligent in being where he was, there was nothing to show that he exercised any care for his own safety after going on the track, from which it could be said that the original negligence ceased to be the contributing cause of the accident.

Appeal from trial term, New York county.

Action by Annie Ferri, as administratrix of the estate of Frank Ferri, deceased, against the Union Railway Company of New York City. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.

Hector M. Hitchings, for respondent.

LAUGHLIN, J. This is a statutory action to recover for the death of Frank Ferri, alleged to have been caused by the defendant's negligence. The decedent was 12 years of age. The accident occurred on Tremont avenue on the 30th day of September, 1901. For the purpose of permitting the construction of a sewer along the middle of the avenue, the defendant's northerly track had been moved north, so that the northerly rail was within 3 or 3½ feet of the northerly curb line. The boy was struck between Marion and Mapes avenues, on the northerly track, by a west-bound car.

The defendant moved for a nonsuit at the close of the plaintiff's case on the ground that she failed to establish the cause of action alleged, and failed to show freedom from contributory negligence on the part of the decedent, or negligence on the part of the defendant. This motion was renewed at the close of the entire case, and to the denials of the motions the defendant excepted. The court ruled that the decedent was guilty of negligence in going upon the track, but left it to the jury to say—

"Whether the negligent entrance upon the track by the boy was negligence which caused or contributed to cause the accident in question; in other

words, whether the negligent entry upon the track by the boy was the proximate cause of the injury in question. If it was, and if, after the boy was there, he exercised such care and prudence to avoid danger as was to be expected from a child of his age and intelligence, then I say that you may find that the deceased was not guilty of any negligence which caused or contributed to cause this injury in question. * * * Was the plaintiff's intestate, the boy, free from contributory negligence? If he ran upon this track within a few feet of the car, as some of the witnesses have testified, he was. He was then guilty of contributory negligence. If, however, as I said before, he got upon this track, and stood there, looking away from the car, in such a position and at such a distance from the car that the motorman by the exercise of ordinary care and prudence should have seen him, and should have stopped before the car ran over him, and otherwise exercised reasonable care and prudence, then I leave it to you to say whether his negligently getting upon the track was the proximate cause of the injury of which complaint is here made."

The defendant's counsel excepted to that part of the charge quoted in which the court left it as a question of fact for the jury to determine whether the boy's negligence in getting upon the track was the proximate cause of the injury; he contending that, as matter of law, such negligence was the proximate cause.

The sewer had been completed at this point, and the trench refilled. The avenue was not paved, and no curbing was set. It does not appear whether it had ever been paved or was to be paved. It appears that considerable distance intervenes between the intersecting streets, but it is not shown how thickly populated the street is, or the extent of travel thereon. The accident happened between half past 7 and 8 o'clock. It was twilight, and the sky and atmosphere were clear. There was an electric light in a store opposite, on the southerly side of the avenue, and in the street at the northwesterly corner of Mapes avenue, less than 100 feet distant, and another within 150 or 200 feet to the east. Immediately before the accident the decedent and four other boys were playing a game called "Kick the Can" at the northerly side of the street. The decedent kicked the can onto the track, and ran after it in the endeavor to kick it again before being overtaken or "tagged" by one of his playmates. The running time of the car was eight miles an hour, including stops. The testimony as to its speed was conflicting. There was evidence indicating that it was running at the usual speed, "pretty good speed," "pretty fast," and the testimony of one witness indicates that it was running about 12 miles an hour. The testimony was also conflicting as to whether the gong was sounded, or whether the motorman shouted to the decedent or did anything to check the speed of the car before the accident. The accident occurred about 25 feet east of Mapes avenue, and the car stopped on that avenue. The testimony of two playmates of the decedent and a passenger called by the plaintiff gave testimony indicating that the boy ran upon the track when the car was manifestly too near to avoid a collision, and that he did not stop or remain standing on the track at all. The testimony of the motorman and of another passenger called by the defendant was also to this effect. Another passenger called by the plaintiff, and still another called by the defendant, did not see the boy, and gave no testimony important upon the point. Cars ran over the track every 10 minutes. The motorman

testified that, running 8 miles an hour, he could stop the car in a car length and a half or two car lengths. Another eyewitness to the accident, called by the plaintiff, was a woman who was in a house on the south side of the avenue, a little west of where the accident occurred. She testified that she was aware that the boys were playing there, and "all at once I heard the boys hallooing to look out, and shouting"; that she then looked out the window, and saw the car about 30 feet behind him, approaching very fast; that she heard no bell; that the decedent appeared to have become excited through his playmates shouting to him; that he ran about 5 feet in front of the car, evidently endeavoring to get off at the north side, and was hit; that the motorman did nothing to stop the car before the accident, but was looking ahead, toward the west,—"just looked at· the front of his car"; that when she first saw the decedent he was standing still, with his back to the car, which was then 30 feet away; that "the car was about thirty feet from him when he started to run off the track"; that she first saw him "standing on the track thirty feet away from the car. He remained standing on the track, with 'his back to the car, a little while before he tried to get off, and the car was coming towards him all that time. Then, when he started to get off the track, after he had been standing there, the car was about ten feet from him. I do not think he started to get off the track until the car was about ten feet from him,—until the boys shouted." This witness previously made a statement in writing to the plaintiff's attorney, which was received in evidence without objection, in which she stated that when she first saw the decedent he was standing in the middle of the track, facing west, and the car was 30 feet or more from him; that "just then the other boys * * * screamed, and he looked around, and at once started to run west in front of the car, and toward the north rail, and continued running vigorously for about ten feet, when the car continuing at full speed, and, going faster than the boy was running, struck him. * * * I saw the motorman distinctly, and he never slackened the speed, or gave any warning by bell or otherwise, until the boy was struck. * * * It was perfectly possible for the motorman to have stopped the car in the distance between the boy and the car when I first saw both. * * * The car was going very fast when I saw it, and all the cars go very fast at night."

. It could not be said, as matter of law, on this evidence, that the decedent was free from negligence in going upon the track, and the jury would have been justified in finding that he was negligent. As has been seen, the court ruled, as matter of law, that he was negligent in getting upon the track. Whether the court was correct in this ruling, or not, need not be determined, for in these circumstances the defendant's exceptions to the charge must be passed upon, the same as if the court had left it to the jury to determine whether the boy was negligent in getting upon the track, and, in case they found him thus negligent, had submitted to them the further question embodied in the instructions to which exception was taken. The material testimony has been stated or quoted, and it will be seen that, with the exception of the witness whose view was from the

house across the way, it all indicates that the boy was not, and could not have been, standing upon the track for any appreciable length of time. A finding that he was would be against the weight of the evidence, and would require a reversal. It will also be observed that the testimony of this witness is not consistent. She testifies both that the boy instantly started to run when she saw him, and had run 10 feet before he was overtaken by the car, and also that he remained standing on the track until the car approached within 10 feet of him, and then ran 5 feet before being struck. But if the jury would have been justified in selecting her version that he was standing on the track while the car approached from a point 30 feet distant to within 10 feet of him, which she contradicts herself and which is controverted by all of the other evidence in the case, yet, assuming that he was negligent in getting into that position, it is not a case for the application of the rule which the learned trial court applied. In these circumstances, his negligence in getting upon the track could not be said to have no connection with the accident. If he was negligent in being where he was, there is nothing to show that he exercised any care or caution for his own safety after being there from which it can be said that the original negligence ceased to be a contributing cause to the accident. The issue, as presented by the pleadings, was whether the decedent was free from negligence, and whether his death was caused by the negligence of the defendant. There is no allegation that the defendant willfully or heedlessly and recklessly ran him down, which would eliminate his contributory negligence.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and O'BRIEN and McLAUGHLIN, JJ., concur. PATTERSON, J., concurs in result.